# COURT OF ERRORS AND APPEALS.

JOHN I. RYERSON AND ABRAHAM DEMAREST, PETER H. PULIS AND PETER H. WINTER, EXECUTORS OF ABRAHAM H. GARRISON, DECEASED, APPELLANTS, v. FREDERICK ADAMS, EXECUTOR OF JOHN I. TUERS, DECEASED, AND IN HIS OWN RIGHT, WILLIAM DEALING, AND CHARITY, HIS WIFE, JACOB FREDERICKS AND JACOB KING, RESPONDENTS.

1. In 1823, T., an habitual drunkard, requested R., at whose store T., was in the habit of buying liquor, to accept a deed for his farm and pay his debts. R. did not consent. Afterwards T., without the knowledge of R., procured a deed from him to R., to be drawn, and executed and acknowledged it, and took it to R. and delivered it to him, and requested him to put it on record, and left it in his hands. R. did not put it on record, but it remained in his hands. On the 20th August, 1831, an instrument was executed by R., by which he, in consideration that T. pay yearly, during his natural life, to R., $18, granted, bargained, remised, released and confirmed unto T., during his life, the said farm in T.'s possession. After this R. caused the deed to be recorded. T. never saw or heard read the writing of August 20th, 1831. The person who drew this writing testified that, before it was drawn, T. had consented that such a writing should be made, and requested him to keep it in his possession.

. 2. The deed was declared void. *Semble,* a deed without consideration, from one whose mind has been greatly impaired by excessive and long-continued intemperance, to another from whom he had been in the habit of buying liquor, and who knew of his excess in the use of it, will be set aside.

3. The decree must conform to the bill, and be warranted by it, both in the relief and in the grounds of relief. Relief not embraced in the prayer of the bill cannot be decreed, nor can the relief asked for be granted upon grounds not disclosed by the bill. It is, however, no objection that the case established by the proof is broader and stronger than that stated in the bill, or that

618

grounds of relief not contained in the bill are established in evidence, provided the decree is warranted by the charges and the prayer of the bill, and the bill is sustained by the evidence.

This case, and the decision of the Chancellor thereupon, is reported *ante p.* 328.

*A. S. Pennington,* for the appellants.

*A. O. Zabriskie,* for the respondents.

GREEN, CHIEF JUSTICE, delivered the opinion of the court.

The first ground of objection to the decree in this cause is, that the case established by the evidence is not disclosed by the pleadings, and that the relief is granted upon a ground not charged by the bill. It is undoubtedly a well-settled rule in equity that the decree must conform to the bill, and be warranted by it, both in the relief and in the grounds of relief. Relief not embraced in the prayer of the bill cannot be decreed, nor can the relief asked for be granted upon grounds not disclosed by the bill. It is, however, no objection that the case established by the proof is broader and stronger than that stated in the bill, or that grounds of relief not contained in the bill are established in evidence, provided the decree is warranted by the charges and prayers of the bill, and the bill sustained by the evidence.

The bill charges that Tuers, having become very intemperate and being exasperated with his wife, and being desirous of securing his estate for the benefit of his own relations, and for the purpose of preventing his wife from inheriting, made a deed of bargain and sale to Ryerson, for his own use. That the deed did not convey the lands to Ryerson, but that the use resulted to Tuers and his heirs. That Ryerson, for a fraudulent purpose, procured the deed to be recorded. That subsequently, knowing that the deed was without consideration and worthless, with the view of rendering it valid and having the lands appropriated to his own use, he conveyed to Garrison.

The bill further charges that the lease from Ryerson to Tuers, if any such existed, was obtained by fraud, and was contrived

and designed by Ryerson, to procure a recognition of his title, to be used after Tuers' death.

The bill prays that the deed may be declared void and of no effect; that it may also be declared that the use of the land under the deed resulted to Tuers, and that he be decreed to recover.

The *gravamen* of the charge is, that the deed was without consideration and not designed to convey the title, and that the recording of the deed, the execution of the lease and the setting up of title to the lands by Ryerson was fraudulent.

There is no charge in the bill that the deed was obtained by fraud or undue influence or improper means, nor can the decree, in my judgment, whatever may be the weight of the evidence, be sustained upon either of these grounds.

It remains to inquire whether the deed is sustained by the evidence, upon the grounds charged in the bill.

The answer admits that at the date of the deed, and at the time of its delivery, no consideration whatever was paid, or secured or agreed to be paid. It was a voluntary conveyance, executed, acknowledged and delivered by the grantor without the assent or concurrence of the grantee. The defendant explains the transaction by stating that Tuers wished him to accept the deed and pay his debts, but that he did not at first agree to do so; that he received the deed and retained it in his possession from May 1st, 1823, to August 20th, 1831, more than eight years, without claiming title under it; that a new contract was then made, the deed accepted and recorded, a lease given and the title perfected in the defendant. Now this is certainly a very unusual transaction and calls for the closest scrutiny at the hands of the court. Tuers, it is alleged, executes, acknowledges and delivers to Ryerson a deed for his farm for the alleged consideration of $3000, but without the payment of $1. The deed is left in Ryerson's custody and under his control. Tuers lies entirely at Ryerson's mercy, exposed at any moment to be turned out of possession, without the least evidence to show what the truth really was, although, as is admitted by the answer, the title was wholly in Tuers. During this period, as appears by the testimony of numerous witnesses, it was reputed in the neighbor-

hood that Ryerson had title to the place, and Ryerson himself repeatedly declared that he had a deed—as good a deed as any man's.

It is clear, from this evidence, that after the delivery of the original deed, and before 1831, which, as the defendant now alleges, he had no title whatever, it was reputed that he had the title, and that he himself claimed to have the title. It is evident, also, that he then had the same title and the same evidence of title that he now has, except so far as that title may be strengthened by the transactions of 1831.

It is worthy of remark, that during this period of eight years, although Ryerson claimed title, and held in his hands a deed of conveyance from Tuers, that Tuers, both by his acts and words, denied the validity of that deed, and treated the land as his own. On the 8th of February, 1825, four years after the date of the deed to Ryerson, he conveyed more than twenty-one acres— nearly one-fifth of the farm—for a valuable consideration, to Abraham Lake, with covenants of general warranty. In March, 1831, he leased seven or eight acres to John S. Forshee, for fifty years. He told Chester Abby, in the presence of Margaret Lake, that the deed to Ryerson was good for nothing. These acts and declarations of Tuers, occurring during the period when Ryererson, by his answer, admits title in Tuers, are clearly competent evidence. They show that Tuers—notwithstanding the deed held by Ryerson, and his claiming the property—regarded himself as the owner, in fee, of the land, with power to dispose of it at his pleasure, thus giving strong countenance to the charge in the bill that the deed was never designed to pass title.

The deed, then, as originally delivered, was clearly inoperative and void. It so continued until the 20th of August, 1831. Was efficacy given to it by the transactions which then took place between the parties? These transactions, the bill charges, were fraudulent, and I think it is abundantly evident, both from the defendant's answer and the evidence in the cause, that the whole transaction of August, 1831, was colorable, merely, and designed to give support to a deed which, otherwise, was confessedly without consideration, fraudulent, and void. There is no evidence of the circumstances under which this deed was resuscitated,

save the defendant's answer. And, upon the statement in the answer, it is obvious that Tuers received nothing whatever as a consideration of the conveyance. The alleged consideration was a promise, by the grantee, to pay the grantor's debts. Now, as against the creditors, the deed, being voluntary, would have been fraudulent and void. It was necessary, therefore, that the debts should be paid, in order to legalize the deed. These debts would have been a virtual encumbrance on the land in the hands of Ryerson. He must have paid them, in order to save his title. It was, therefore, a simple conveyance by Tuers to Ryerson, of his whole farm, subject to the payment of his debts, without one dollar of consideration for the conveyance. Nor is it pretended that Ryerson paid the debts at the time of the conveyance, or entered into any binding engagement to pay them, or procured a release to Tuers from them. There is no clause in the deed showing that Ryerson held the land in trust to pay the debts, nor is it pretended that any written engagement to that effect, was given either to Tuers or to the creditors. There appears to have been no witness to the transaction. Tuers, therefore, could not have enforced the contract, nor could the contract have been enforced by the creditors, because, being a promise to pay the debts of a third person, and not in writing, it was void by the statute of frauds and perjuries. The pretended consideration, therefore, was entirely illusory. Ryerson promised nothing—did nothing which, independent of his contract, he was not bound to perform. Tuers received nothing but a nugatory promise. But, admitting that the promise to pay the debts of the grantor when executed, formed a valid consideration for the conveyance, still, the averment of the answer that such promise to pay formed the consideration of the conveyance, is not responsive to the bill, is contradictory of the deed itself, and is entirely unsupported by the evidence. On the contrary, the whole transaction relative to the procurement and execution of the release—or, as it is termed in the answer, the lease—from Ryerson to Tuers, as detailed by Van Dien, the scrivener who drew the paper, and the principal witness for the defence, is utterly irreconcilable with the defendant's answer.

The fact that the recording of the deed and the giving of the

release were calculated to confirm the title of Ryerson; that the pretended consideration was neither paid nor secured to be paid at the time of recording the deed; that the release to Tuers was not placed upon record and that he had no guaranty for his protection but the integrity of Van Dien, who was paid by Ryerson; that Tuers never saw the lease nor heard it read; that Ryerson never exercised, in Tuers' presence or under his notice, the privilege reserved by the lease of cutting timber upon the farm; that from the alleged delivery of the title, until Tuers' death, a period of more than eleven years, Ryerson did not act within Tuers' knowledge manifesting his title; that Tuers did no act and made no declaration admitting the title, are strongly corroborative of the charges in the bill that the deed was not only without consideration, but that it was never designed to convey title, that it enured to the use of Tuers, and that the claim of title by Ryerson is fraudulent.

Nor ought it to escape notice that this deed was originally given by a man of very intemperate habits to the person who furnished him with the means of vicious indulgence; that the grantee had no claim of blood or kindred upon the grantor; that the only alleged consideration was the payment of the grantor's debts; that there is no evidence of importunity on the part of the creditors; that the only debts ever paid were paid to Ryerson's own son; that those debts were contracted years after the original deed was executed, and that they were utterly inadequate to the value of the land.

Upon the evidence in the cause it is apparent that Garrison took his deed from Ryerson with knowledge of the fraud, at least sufficient to put him upon inquiry. He can stand in no better situation than Ryerson himself. He does not, moreover, occupy in equity the position of a *bona fide* purchaser, having parted with no valuable consideration to obtain the title.

It is further objected to the decree that it authorizes an account to be taken against Ryerson of the proceeds of the sale of Tuers' personal property at auction, when it appears by the evidence that after that sale there was a settlement between the parties. It is, perhaps, not certain from the evidence that the settlement was a general one, or that it included the proceeds of

the auction sales, and if it be so, it can hardly be presumed at this stage of the cause, that the Chancellor will finally decree an account against the appellant for matters which by the evidence appear to be settled, or barred by lapse of time. I think there ought not to be a reversal upon this ground.

In my opinion, the decree should be affirmed, with costs.

The court, (NEVIUS, Justice, and McCARTER, Judge, dissenting,) concurred in this opinion.

**Decree affirmed.**